**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| TODD JEUDE,           ) | |
|               Plaintiff,     ) | |
| v.                    ) | No. 1:24-cv-00100-ACL |
| STE. GENEVIEVE COUNTY MEMORIAL HOSPITAL, et al., ) | |
|              Defendants.    ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Todd Jeude's Motion to Proceed in Forma Pauperis. (ECF No. 2). Having reviewed the motion and the financial information provided in support, the Court will grant the request and assess an initial partial filing fee of $44.70. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will allow Plaintiff to proceed on his EMTALA and *Monell* claims against Ste. Genevieve County Memorial Hospital, and his state law and deliberate indifference claims against Dr. Teena Sharrock. The Court will dismiss all other claims.

**Initial Partial Filing Fee**

Congress has mandated that federal courts collect a filing fee from a party instituting any civil action, suit, or proceeding. 28 U.S.C. § 1914. Courts may waive this fee for individuals who demonstrate an inability to pay. 28 U.S.C. § 1915(a)(1). When a court grants such a waiver, the plaintiff proceeds in forma pauperis ("IFP").

To obtain IFP status, a non-prisoner litigant must file a motion and an affidavit demonstrating their inability to pay. If the Court determines that the litigant lacks sufficient financial resources, it will waive the filing fee entirely.

Different rules apply to prisoner litigants under the Prisoner Litigation Reform Act ("PLRA"). In addition to the standard IFP affidavit, prisoners must submit a certified copy of their inmate account statement reflecting the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(a)(2). If the Court finds that the prisoner lacks sufficient funds, it will assess an initial partial filing fee equal to 20% of either the prisoner's average monthly deposits or average monthly balance, whichever is greater. 28 U.S.C. § 1915(b)(1). After this initial payment, the prisoner must make monthly payments equal to 20% of their income until the fee is paid in full. 28 U.S.C. § 1915(b)(2). The prison will forward these payments to the Court whenever the prisoner's account balance exceeds $10. *Id.* Even if the Court grants IFP status, a prisoner litigant must pay the entire filing fee over time. *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998) (The PLRA "requires all inmates to pay filing fees[.]"); *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998) ("The purpose of the Act was to require all prisoner-litigants to pay filing fees in full[.]").

In support of his motion, Plaintiff has submitted an account statement that reflects deposit activity from February 23, 2024, to March 25, 2024. (ECF No. 3). While the statement does not cover the entire six-month period preceding the filing of the complaint, the Court was able to calculate an average monthly deposit of $223.50 for the period shown. Thus, the Court will assess an initial partial filing fee of $44.70, representing 20% of Plaintiff's average monthly deposits over that time. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances").

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss any complaint that (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. The Court must liberally construe complaints filed by self-represented individuals under § 1915(e)(2). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). If the essence of an allegation is discernible, the district court should interpret the complaint in a way that allows the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Liberal construction, however, does not exempt self-represented plaintiffs from the fundamental requirement of pleading facts sufficient to state an actionable claim. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court will not supply additional facts or construct legal theories to support the plaintiff's claims. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

**The Complaint**

Plaintiff is presently incarcerated at FCI Yazoo City Low in Yazoo City, Mississippi. He states that several inmates attacked him on September 20, 2022, when he was a pretrial detainee at the Ste. Genevieve County Detention Center ("SGCDC"). He alleges that the inmates knocked him unconscious and continued to beat him. He suffered a laceration to the cheek measuring approximately 1.5 inches long and a quarter inch deep. He also experienced injuries to his head, neck, shoulder, upper back, and torso.

Following the incident, Deputy Crocker took Plaintiff to the jail's medical unit. Deputy Crocker contacted Nurse Ledbetter, who was at home. Nurse Ledbetter said Plaintiff should be transported to the emergency room at the Ste. Genevieve County Memorial Hospital ("Hospital").

Deputy Crocker and another officer transported Plaintiff to the hospital, where Plaintiff described the incident to a nurse. After the nurse left the exam room, Dr. Teena Sharrock entered and stated: "So you got yourself beat up pretty good in the jail, eh?" When Plaintiff explained that he had been knocked unconscious, Dr. Sharrock asked: "For how long? How long were you knocked out?" Plaintiff could not give a definitive answer and looked to Deputy Crocker for help. Deputy Crocker stated that Plaintiff "appeared to be unconscious when his body went limp and he fell between the benches, it was pretty bad." Dr. Sharrock interrupted Deputy Crocker and stated: "I asked him, not you." Plaintiff then tried to communicate the severity of his pain when Dr. Sharrock stated: "There will be no x-rays, no observations, no sutures. Take him back to your facility and treat him there." As she left the room, Dr. Sharrock stated: "I'll grant a tetanus vaccine."

According to Plaintiff, Dr. Sharrock never treated or examined the injuries to his head, back, shoulder, face, or abdomen. Plaintiff was discharged after only receiving a tetanus vaccine. He returned to the jail "in tremendous pain" and with his cheek still bleeding. The next morning, Nurse Ledbetter examined Plaintiff and expressed concern about the "open and gaping wound" on his cheek.

Plaintiff saw Dr. Shane Keddy on September 29, 2022. Dr. Keddy ordered an MRI and prescribed pain medications. Plaintiff returned to the Hospital on December 7, 2022, for the MRI. The results showed a fractured shoulder, three compressed vertebrae, and a herniated disc.

Dr. Keddy visited Plaintiff two days later. He ordered an arm sling and additional pain medications. He also moved Plaintiff to the medical wing of the jail and referred him to Dr. Jesse Beard, an orthopedic surgeon.

Dr. Beard evaluated Plaintiff in mid-December 2022. Dr. Beard explained that the fracture appeared to be slowly healing on its own "due to the two-month delay[.]" He administered cortisone injections for the pain and prescribed Lyrica for nerve damage. The injections dulled but did not eliminate the pain. Plaintiff saw Dr. Beard again in March 2023 and received another cortisone shot.

Plaintiff was released from custody on September 1, 2023, and he visited Mercy Hospital in St. Louis two days later. A doctor ordered a CT scan, which showed bone spurring from the shoulder fracture.

Plaintiff brings this action against Dr. Teena Sharrock and the Hospital.[1] He seeks declaratory relief, compensatory damages, and punitive damages.

## Discussion

In Counts I and II, Plaintiff asserts that the defendants violated the Emergency Medical Treatment and Labor Act ("EMTALA"); 42 U.S.C. § 1395dd(a)-(b). In Count III, Plaintiff asserts official-capacity claims against both defendants under 42 U.S.C. § 1983. In Count IV, Plaintiff asserts a § 1983 claim against Dr. Sharrock in her individual capacity. Plaintiff asserts a state law medical malpractice claim in Count V.

### 1. EMTALA

Under EMTALA, hospitals that participate in Medicare must screen any individual who comes to their emergency department seeking treatment to determine whether an emergency medical condition exists. 42 U.S.C. § 1395dd(a). If such a condition is found, the hospital must provide stabilizing treatment before discharging or transferring the patient. 42 U.S.C. § 1395dd(b).

---

[1] Plaintiff filed a nearly identical action in November 2022. *See Jeude v. Ste. Genevieve Mem'l Hosp., et al.*, No. 1:22-cv-00151-SNLJ (E.D. Mo. Nov. 2, 2022). The Court dismissed that action on December 21, 2023, for failure to prosecute. *Id.*

An EMTALA violation occurs when a hospital either fails to conduct adequate screening or discharges/transfers a patient without first stabilizing their emergency medical condition. *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009) (discussing EMTALA obligations to screen and stabilize). EMTALA liability is determined independently of any state law negligence or malpractice claims. *Torretti v. Main Line Hosp., Inc.*, 580 F.3d 168, 172 (3d Cir. 2009). For EMTALA obligations to arise, there must be "some manifestation of acute symptoms" that would make the hospital aware of the individual's condition." *Urban By & Through Urban v. King*, 43 F.3d 523, 526 (10th Cir. 1994) (interpreting § 1395dd(e)(1)).

Plaintiff claims he had serious injuries, including a bleeding laceration and head trauma symptoms, but received only a cursory screening from Dr. Sharrock. The subsequent MRI revealed a fractured shoulder, compressed vertebrae, and a herniated disc—conditions that went undiagnosed during his emergency room visit. These facts, accepted as true for the purposes of this analysis only, support the inference that the Hospital failed to provide an appropriate medical screening as required by EMTALA. Further, the fact that the Hospital discharged Plaintiff without treating his laceration, leading to Nurse Ledbetter's concern about the "open and gaping wound" the next day, suggests the Hospital failed to stabilize Plaintiff before discharge. These allegations, accepted as true, warrant an inference that the Hospital failed to properly screen and stabilize Plaintiff. Accordingly, the Court will direct the Clerk of Court to issue process as to the Hospital on Plaintiff's EMTALA claims. The Court will dismiss Plaintiff's EMTALA claim against Dr. Sharrock because EMTALA does not provide a private cause of action against individual physicians. *See* 42 U.S.C. § 1395dd(d)(2)(A) (recognizing a cause of action against participating hospitals only).

### 2. *Monell* and 42 U.S.C. § 1983

In Count III, Plaintiff asserts claims against the defendants in their official capacities under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). He contends that the Hospital is owned by Ste. Genevieve County and is a subdivision of the State of Missouri.

Section 1983 provides a private cause of action against persons who, acting under color of state law, deprive another of a right secured by the Constitution and laws of the United States. 42 U.S.C. 1983. It does not itself create substantive rights but rather serves as a procedural vehicle for enforcing federal rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a claim under § 1983, Plaintiff must show that the defendants acted under color of state law and violated his federally protected rights. *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

To the extent Plaintiff asserts that the Hospital is an arm of the state, his § 1983 claims must fail. A state-owned hospital is not a "person" for the purposes of § 1983. *See Walker v. Arkansas State Hosp.*, 221 F.3d 1346 (8th Cir. 2000) (affirming trial court's dismissal on the basis that the Arkansas State Hospital is not a person for the purposes of § 1983). Similarly, Dr. Sharrock, acting in her official capacity, is not a "person" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983."). For these reasons, the Court will dismiss Plaintiff's § 1983 claims against the Hospital and Dr. Sharrock to the extent they are premised on the Hospital's status as a state entity.

Nevertheless, a local governing body can be sued directly under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on such a claim, a plaintiff must establish the governmental entity's liability for the alleged misconduct. *Kelly v.*

*City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Plaintiff asserts that the Hospital is a county-owned entity. He does not meaningfully allege that the Hospital maintains an unconstitutional official policy. Instead, he argues that the Hospital perpetuates an unconstitutional custom of undertreating detainees and undertraining its staff. Because Plaintiff has named Dr. Sharrock in her official capacity only, the Court will analyze this claim as though the Hospital is the sole defendant. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (stating that an official-capacity claim against an individual is a claim "against the governmental entity itself.").

To establish a claim of liability based on an unconstitutional custom, a plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

To establish liability based on a deliberately indifferent failure to train or supervise, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Jennings v. Wentzville R-IV Sch. Dist.*,

8

397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, Plaintiff states that Dr. Sharrock "routinely treats detainees to a substandard level of care when detainees are brought or presented" to the Hospital's emergency department. He asserts that officers and other individuals from SGCDC have complained to the Hospital about Dr. Sharrock's conduct and that nothing has changed as a result. Plaintiff further alleges that he suffered bodily harm as the result of Dr. Sharrock's conduct.

The crux of Plaintiff's Count III is that Dr. Sharrock has implemented a custom or practice of undertreating detainees, the Hospital has tacitly approved of this approach by not addressing complaints filed against Dr. Sharrock, and that he was injured as a result. These same allegations suggest that the Hospital was aware of Dr. Sharrock's conduct and knew it was likely to result in a violation of constitutional rights. Liberally construed and accepted as true, the Court finds that Plaintiff has stated a plausible *Monell* claim against the Hospital. Consequently, the Court will direct the Clerk of Court to issue process as to the Hospital on Plaintiff's *Monell* claim. To the extent Plaintiff asserts claims under § 1983 on the basis that the Hospital is a state entity, the Court will dismiss those claims. The Court will also dismiss Count III in its entirety against Dr. Sharrock. *See King v. City of Crestwood, Mo.*, 899 F.3d 643, 650 (8th Cir. 2018) ("[A]s a suit against a government official in his official capacity is functionally equivalent to a suit against the employing governmental entity, a suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named.").

### 3. Individual Capacity and § 1983

In Count IV, Plaintiff asserts a claim of deliberate indifference to a serious medical need against Dr. Sharrock under § 1983. As explained above, to sustain a claim under § 1983, a plaintiff must show that the defendant acted under color of state law and violated his federally protected rights. *Zutz*, 601 F.3d at 848.

Generally, county-owned hospitals and their employees are considered state actors. *Burks v. Carter*, No. 5:10-CV-00358 BSM, 2013 WL 822513, at *2 (E.D. Ark. Mar. 5, 2013); *see Beedle v. Wilson*, 422 F.3d 1059, 1070 (10th Cir. 2005). Even so, physicians who serve as independent contractors are often considered private actors. *See, e.g., Lewellen v. Schneck Med. Ctr.*, No. 4:05CV0083-JDT-WGH, 2007 WL 2363384, at *1 (S.D. Ind. Aug. 16, 2007).

Here, Plaintiff asserts that Dr. Sharrock is "an employee" of the Hospital. Accepting this allegation as true—and in the spirit of liberal construction—the Court will assume for the sake of this analysis only that Dr. Sharrock acted under color of state law when she treated Plaintiff. The analysis then turns on whether Dr. Sharrock violated Plaintiff's constitutional rights.

At all times relevant to this action, Plaintiff was a pretrial detainee at SGCDC. Thus, his deliberate indifference claim falls under the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). The Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006); *see also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

The Eighth Amendment obligates the government to provide medical care to incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To show inadequate care, an inmate must prove the defendant acted with deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997). To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that the defendant actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019).

Plaintiff claims he presented to Dr. Sharrock with serious injuries, including a bleeding laceration and head trauma symptoms. When he described his pain, she responded: "There will be no x-rays, no observations, no sutures. Take him back to your facility and treat him there." According to Plaintiff, Dr. Sharrock never treated or examined his injuries. Later imaging suggests that Plaintiff was likely suffering a fractured shoulder, three compressed vertebrae, and a herniated disc when he saw Dr. Sharrock. These allegations warrant an inference that Plaintiff suffered an objectively serious medical need and that Dr. Sharrock was aware of but disregarded that need. Accordingly, the Court will direct the Clerk of Court to issue process as to Dr. Sharrock on Plaintiff's deliberate indifference claim.

**4. Medical Malpractice**

In Count V, Plaintiff brings a claim against the Hospital and Dr. Sharrock under § 538.210 of the Revised Statutes of Missouri, seeking damages for personal injury resulting from the failure to render health services. To succeed on this claim, Plaintiff must establish that Dr. Sharrock failed to use the degree of skill and learning ordinarily exercised under similar circumstances by members of the same profession, and that this failure directly caused or contributed to his injury. Mo. Rev. Stat. § 538.210. For the purposes of § 538.210, "health care provider" includes any

11

physician or hospital that provides healthcare services under the authority of a license or certificate. Mo. Rev. Stat. § 538.205. A hospital may be held liable for the acts or omissions of its employees. Mo. Rev. Stat. § 538.210.3.

Based on the factual allegations highlighted in the previous section, the Court finds that Plaintiff has stated a plausible claim to relief against the Hospital and Dr. Sharrock under § 538.210. Therefore, the Court will direct the Clerk of Court to issue process as to both defendants on Plaintiff's state law claim. *See* 28 U.S.C. § 1367.

### Pending Motions

Plaintiff has filed a "Motion to Clerk Pursuant to Rule 54(d)(1) and 28 U.S.C. § 1920(4)." (ECF No. 7). He seeks to recover his costs and expenses in this matter. Plaintiff's motion is premature. This matter is still pending and there is no prevailing party at this stage. *See* Fed. R. Civ. P. 54. Therefore, the Court will deny Plaintiff's motion for costs.

Plaintiff has also filed a Motion to Compel Arbitration. (ECF No. 8). That motion is also premature. The defendants have not been served in this matter and the Court has not issued a case management order. Therefore, the Court will deny Plaintiff's Motion to Compel Arbitration.

Lastly, Plaintiff has filed a Motion for Appointment of Counsel. (ECF No. 4). Pro se litigants do not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint

counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). Having considered these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated up to this point that he can adequately present his claims to the Court. The Court may entertain future motions for appointment of counsel as the case progresses.

## Conclusion

For the foregoing reasons, the Court will allow Plaintiff to proceed on his EMTALA, *Monell*, and § 538.210 claims against the Hospital, and his § 538.210 and deliberate indifference claims against Dr. Sharrock. The Court will dismiss all other claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Proceed in Forma Pauperis (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall pay an initial filing fee of $44.70 within **twenty-one (21) days** of the date of this order. Plaintiff shall make his remittance payable to "Clerk, United States District Court," and shall include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) a statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 4) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Clerk Pursuant to Rule 54(d)(1) and 28 U.S.C. § 1920(4)" (ECF No. 7) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Arbitration (ECF No. 8) is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue as to Ste. Genevieve County Memorial Hospital on Plaintiff's EMTALA, *Monell*, and § 538.210 claims.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue as to Dr. Teena Sharrock on Plaintiff's § 538.210 and deliberate indifference claims.

**IT IS FURTHER ORDERED** that all other claims are **DISMISSED** without prejudice. An appropriate order of partial dismissal will accompany this order.

Dated this 18th day of November, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE