UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TODD JEUDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:24-cv-00100-ACL |
| STE. GENEVIEVE COUNTY | ) |
| MEMORIAL HOSPITAL et al., | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Todd Jeude brings this action against Ste. Genevieve County Memorial Hospital ("the Hospital") and Dr. Teena Sharrock, alleging they provided inadequate medical care while he was a pretrial detainee at the Ste. Genevieve County Detention Center. After initial review under 28 U.S.C. § 1915(e)(2), the following claims remain: (1) Jeude's EMTALA and *Monell* claims against the Hospital; (2) his state-law medical negligence claims against both defendants; and (3) his deliberate indifference claim against Dr. Sharrock in her individual capacity. (ECF No. 10). Now before the Court are the Hospital's three motions to dismiss. (ECF Nos. 17, 19, 21).

**I.      Background**

Jeude alleges that on September 21, 2022, an unknown detainee struck him repeatedly in the face. Another detainee then held him against a wall while a third struck him. Jeude states that, at some point, all three assailants attacked him and continued to do so even after rendering him unconscious. He claims that one attacker repeatedly slammed

his head against a metal bench, and that all three took turns kicking and stomping on his head, neck, shoulders, and torso. Jeude further states that one of his attackers struck him several times with a makeshift shank, causing painful scratches and a 1.5-inch laceration to his cheek.

Deputies transported Jeude to the Hospital. Once there, Jeude relayed the incident to a nurse. After the nurse left the exam room, Dr. Sharrock entered and said: "So you got yourself beat up pretty good in the jail, eh?" When Dr. Sharrock asked Jeude how long he had been unconscious, Jeude looked to Crocker for assistance. Crocker reported that Jeude "appeared to be unconscious when his body went limp and he fell between the benches, it was pretty bad." Dr. Sharrock interrupted and stated: "I asked him, not you." Jeude then tried to communicate the severity of his shoulder pain, but Dr. Sharrock allegedly interrupted again: "There will be no x-rays, no observations, no sutures. Take him back to your facility and treat him there." Dr. Sharrock then ordered a tetanus vaccine. Jeude was discharged after receiving the vaccine.

According to Jeude, Dr. Sharrock never treated or examined his injuries. He claims he returned to the jail "in tremendous pain" and with his cheek still bleeding. The next morning, Nurse Ledbetter examined Jeude and expressed concern about the wound on his cheek.

Eight days later, Dr. Shane Keddy prescribed pain medications for Jeude and ordered an MRI, which occurred at the Hospital on December 7, 2022. Jeude alleges that the results showed a fractured shoulder, three compressed vertebrae, and a herniated disc.

Dr. Keddy visited Jeude on December 9, 2022. He ordered an arm sling and

additional pain medications. He also moved Jeude to the medical wing of the jail and referred him to Dr. Jesse Beard, an orthopedic surgeon.

Dr. Beard evaluated Jeude in mid-December 2022 and explained that the fracture appeared to be slowly healing on its own "due to the two-month delay[.]" He administered cortisone injections for the pain and prescribed Lyrica for nerve damage.

Jeude was released from custody on September 1, 2023. He states that he visited Mercy Hospital in St. Louis two days later, and that a CT scan showed bone spurs in his shoulder. He seeks compensatory damages, punitive damages, and declaratory relief.

The U.S. Marshals served the Hospital on November 27, 2024. (ECF No. 23). Dr. Sharrock remains unserved. (ECF Nos. 24, 49).

**II.    Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when its factual content allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). However, the Court is not bound by legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Although the plausibility standard does not require "detailed factual allegations," it

demands more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## III. Discussion

### A. Counts I–II: EMTALA

In Counts I and II, Jeude alleges that the defendants failed to properly screen and stabilize his condition in accordance with the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(a)–(b). In its motion to dismiss, the Hospital argues that it properly screened Jeude and that his injuries did not trigger EMTALA's duty to stabilize.

As relevant here, EMTALA imposes two distinct obligations on hospitals with emergency departments: (1) to provide "an appropriate medical screening examination" to determine whether an emergency medical condition exists; and (2) if such a condition exists, to stabilize the condition. 42 U.S.C. § 1395dd(a)–(b).

#### i. Screening

EMTALA does not guarantee proper diagnosis or provide a federal remedy for medical negligence. *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir. 1996). As used in the statute, the term "appropriate" speaks not to the quality of screening procedures, but to the uniformity of their application. *Id*. at 1138. Simply put, EMTALA prohibits the disparate treatment of similarly situated patients. *Id*.

Here, Jeude reports that a nurse entered his exam room and "immediately inquired" about the alleged assault and injuries. (ECF No. 1 at 14). After the nurse left, Dr. Sharrock entered the room, circled the exam table, and examined Jeude with a

4

penlight. *Id*. at 15. When Jeude reported being knocked unconscious, Dr. Sharrock asked how long. *Id.* at 16. When he tried to explain the severity of his shoulder pain, Jeude claims that Dr. Sharrock interrupted and said, "There will be no x-rays, no observations, no sutures, take him back to your facility and treat him there." *Id*. Dr. Sharrock then ordered a tetanus shot for Jeude and left the room. *Id*.

Jeude claims that he received lesser screening than similarly situated patients. He alleges that when another detainee, Cameron Houston, presented at the Hospital with a facial laceration, staff cleaned and sutured the wound. *Id*. at 25.

Jeude's own allegations establish that he was screened. The question then is whether Jeude's allegations plausibly demonstrate that the Hospital treated him differently than similarly situated patients. *Summers*, 91 F.3d at 1139.

According to Jeude, the fact that staff cleaned and sutured Houston's wound establishes disparate treatment. But Jeude and Houston did not present with the same overall condition. Although both sustained facial lacerations, there is nothing in the complaint to show the comparative severity of those wounds. Moreover, after Jeude relayed the details of the assault, he complained of the severity of his shoulder pain, suggesting that his shoulder, not his cheek, was the primary concern. Despite alleging that he was never screened, Jeude acknowledges that Dr. Sharrock examined him and ordered a tetanus vaccine. EMTALA requires uniform screening procedures, not a particular diagnosis or treatment outcome. More significantly, Jeude does not allege that Houston received x-rays or other imaging, despite also being assaulted at the jail. These allegations, even accepted as true, do not plausibly allege that the Hospital treated Jeude

5

differently than similarly situated patients.

      **ii.**      **Stabilization**

EMTALA also requires hospitals to stabilize patients with "emergency medical conditions." 42 U.S.C. § 1395dd(b)(1). An "emergency medical condition" exists only where the absence of immediate medical attention could reasonably be expected to seriously jeopardize a patient's health, seriously impair the patient's bodily functions, or result in the serious dysfunction of any part of the patient's body. 42 U.S.C. § 1395dd(e)(1)(A)(i)–(iii). The duty to stabilize arises only after a hospital "determines" such a condition exists. *Summers*, 91 F.3d at 1140. Put another way, unless a hospital has actual knowledge of a patient's emergency medical condition, it does not have a duty to stabilize. *Id*. Hospitals are not required to stabilize conditions they are not aware of, even if they should have been aware of them. *Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 145 (4th Cir. 1996). The fact that a patient's condition later proved more severe does not establish liability under EMTALA. *Id*. The screening hospital must actually perceive the seriousness of the medical condition and fail to stabilize it. *Id*.

Here, Jeude arrived at the Hospital with a laceration on his cheek and pain in his head, neck, right arm, shoulder, and torso. (ECF No. 1 at 14–16). He alleges that Dr. Sharrock examined him, ordered a tetanus shot, and told prison officials to return him to the jail to "treat him there." *Id*. at 16. Jeude states that an MRI conducted 10 weeks later revealed a fractured shoulder, compressed vertebrae, and a herniated disc. *Id*. at 18.

The complaint establishes that Jeude presented with a visible laceration to his face, that Dr. Sharrock examined him, and that she prescribed a tetanus vaccine. There is no

indication that Dr. Sharrock perceived an emergency medical condition, much less that she refused to treat one. It is inapposite that later evaluation uncovered serious injuries. *Vickers*, 78 F.3d at 145. Further, Jeude's allegation that Dr. Keddy subsequently ordered an MRI in no way suggests that Dr. Sharrock herself perceived his shoulder or spine injuries. If anything, the 10-week delay in receiving the MRI suggests that those injuries were not visibly serious. But even if the Hospital should have perceived those conditions, that alone is not enough. *Id*. Therefore, accepted as true, Jeude's allegations do not establish a failure to stabilize.

> B.  **Count III: *Monell***

In Count III, Jeude seeks to hold the county-owned Hospital liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for the allegedly unconstitutional medical care he received. Specifically, he alleges that Dr. Sharrock "routinely treats detainees to a substandard level of care" and that the Detention Center "routinely complained" about her care. (ECF No. 1 at 39). He further asserts that the Hospital was "fully aware of" and "tacitly approved of" this "custom or practice." *Id*. at 40–41. Jeude also claims that the Hospital failed "to manage or oversee or train Sharrock[.]" *Id*. at 41.

In its motion to dismiss, the Hospital argues that Jeude did not suffer an objectively serious medical need and therefore there is no basis for his *Monell* claim. Under *Monell*, a local governing body can be sued directly under 42 U.S.C. § 1983. *Monell*, 436 U.S. at 690. To prevail on such a claim, a plaintiff must establish the governmental entity's liability for the alleged misconduct. *Kelly v. City of Omaha, Neb.*,

7

813 F.3d 1070, 1075 (8th Cir. 2016). The governmental entity cannot be held liable solely because it employs a tortfeasor. *Monell*, 436 U.S. at 691. Rather, liability may attach only where the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

### i.     Unofficial Custom

To state an unofficial-custom claim, Jeude must allege (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct; (2) the Hospital's deliberate indifference to or tacit authorization of the conduct after notice; and (3) that the custom was the moving force behind his injury. *Mick*, 883 F.3d at 1080.

Here, Jeude alleges that the Hospital, through Dr. Sharrock, maintained a custom of providing a lower standard of care to detainees. Even so, he expressly alleges that Houston received superior care as a detainee. Far from illustrating a widespread pattern of undertreatment, that allegation suggests that the Hospital did not uniformly undertreat detainees. Jeude's isolated experience, standing alone, is insufficient to establish the existence of an unconstitutional policy or custom. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Further, the fact that jail officials "complained" about Dr. Sharrock, without more, does not support a plausible inference that policymakers were on notice and yet ignored

8

the alleged custom of undertreating detainees. Jeude does not identify who made the complaints, when they were made, to whom they were directed, or how the Hospital responded.

Finally, Jeude fails to allege that his injuries were caused by the allegedly unconstitutional custom rather than a one-off medical decision by Dr. Sharrock. His allegations do not allow the Court to reasonably infer that the Hospital maintained an unconstitutional custom and that the custom was the moving force behind his injury. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

### ii.    Failure to Train or Supervise

To maintain a failure-to-train claim, it is not enough to show that a particular employee received inadequate training or supervision. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The need for more or different training or supervision must be so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers can reasonably be said to have been deliberately indifferent to the need. *Id*. Ordinarily, a plaintiff must establish a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Jeude asserts only that Dr. Sharrock was insufficiently trained and supervised. By his own admission, Houston received adequate care at the Hospital. Jeude's bare allegations do not allow the Court to reasonably infer that Hospital policymakers were aware of, yet disregarded, a pattern of constitutional violations by untrained or unsupervised employees. Mere "labels and conclusions" are not enough. *Twombly*, 550

9

U.S. at 555. Because Jeude pleads only conclusory assertions without particularized facts, his allegations do not plausibly establish an unconstitutional policy, custom, or failure to train. Accordingly, the Court dismisses Count III for failure to state a plausible claim to relief.

### C.     Count V: Missouri Medical Negligence

Jeude brings a state-law medical negligence claim against the Hospital and Dr. Sharrock pursuant to Mo. Rev. Stat. § 538.210. He alleges that Dr. Sharrock failed to use the degree of skill and learning ordinarily exercised under similar circumstances, and that her omissions directly caused his injuries. Jeude further contends that the Hospital is liable for Dr. Sharrock's conduct by virtue of its role as a healthcare provider. The Hospital moves to dismiss Count V on two independent grounds: (1) Jeude's failure to file the health care affidavit required by Mo. Rev. Stat. § 538.225, and (2) the Hospital's entitlement to sovereign immunity as a county-owned entity.

Section 538.225 provides that in any action against a healthcare provider for damages on account of rendering or failing to render health care services, the plaintiff must file an affidavit from a legally qualified healthcare provider attesting to the merits of the claim. Mo. Rev. Stat. § 538.225.1. The affidavit must be filed within 90 days of filing the petition, subject to a possible 90-day extension for good cause. § 538.225.5. If a compliant affidavit is not timely filed, dismissal without prejudice is mandatory. *SSM Health Care St. Louis v. Schneider*, 229 S.W.3d 279, 281 (Mo. App. E.D. 2007).

Here, more than 180 days have passed since filing, and Jeude has not filed a § 538.225 affidavit, nor sought an extension of time to do so. In response to the

10

Hospital's motion to dismiss, he argues that the affidavit requirement is merely "procedural" and thus inapplicable to this Court. The Eighth Circuit, however, has squarely rejected that argument. *See, e.g., Keating v. Smith*, 492 F. App'x 707 (8th Cir. 2012); *Mackovich v. United States*, 630 F.3d 1134, 1135 (8th Cir. 2011) (per curiam). Accordingly, the Court dismisses Count V as against the Hospital.[1] Because dismissal is required on this basis, the Court need not address the Hospital's alternative argument that it is entitled to sovereign immunity.

## IV. Service on Dr. Sharrock

Dr. Sharrock has not yet been served. The United States Marshals Service has attempted service on more than one occasion, most recently on June 16, 2025, without success. (ECF No. 49). While *in forma pauperis* plaintiffs should not be penalized for a marshal's failure to obtain service, it is nevertheless a plaintiff's responsibility to provide proper addresses for service. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993). Accordingly, the Court orders Jeude to provide, within 30 days, a valid service address for Dr. Sharrock. Failure to do so will result in the dismissal of Jeude's claims against Dr. Sharrock without prejudice under Rule 4(m).

## V. Conclusion

For the foregoing reasons, the Court grants the Hospital's motions to dismiss (ECF Nos. 17, 19, 21) and dismisses all remaining claims against the Hospital. The only

---

[1] The Court notes that Jeude has likewise not filed the affidavit required by § 538.225 in connection with his medical negligence claim against Dr. Sharrock. Because Dr. Sharrock has not been served or appeared in this case, however, the Court reserves ruling on that issue until she has an opportunity to respond.

11

remaining claims in this action are Jeude's deliberate-indifference claim and his state-law negligence claim against Dr. Sharrock in her individual capacity. Jeude must provide a valid service address for Dr. Sharrock within 30 days.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ste. Genevieve County Memorial Hospital's motions to dismiss (ECF Nos. 17, 19, 21) are **GRANTED**.

**IT IS FURTHER ORDERED** that Counts I–III and Count V are **DISMISSED** as to Defendant Ste. Genevieve County Memorial Hospital.

**IT IS FURTHER ORDERED** that Jeude must provide a valid service address for Dr. Sharrock within 30 days.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

An appropriate Order of Partial Dismissal accompanies this Memorandum and Order.

Dated this 23rd day of September 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE